FILED

'00 MAR 17 A 9:21

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARTHA PRICE,                )
                             )
        Plaintiff,           )
                             )
v.                           )    Case No. CV-98-TMP-1354-S
                             )
MARSHALL DURBIN FOOD         )
COMPANIES, INC. et al.,      )
                             )
        Defendants.          )

ENTERED
MAR 17 2000

### MEMORANDUM OPINION

This action is before the court on defendant Marshall Durbin Food Companies, Inc.'s ("Marshall Durbin") motion for partial summary judgment on the issue of punitive damages, filed October 27, 1999. The motion was supported by a brief and evidentiary submissions. Plaintiff Martha Price responded to the motion by filing an opposition and evidentiary materials on November 22, 1999. All parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

### I.  UNDISPUTED FACTS

Viewing the evidence in the light most favorable to the nonmoving party, as this court must, the facts pertinent to defendant's motion for partial summary judgment are as follows.

48

Plaintiff Martha Price began working in the sanitation department of the Marshall Durbin processing plant in Irondale, Alabama, in March of 1994. She was hired as a night-shift maintenance worker. Her main duties included cleaning offices, break rooms, and restrooms at the Irondale plant. Beginning in June of 1994, Price complained to Joe Hasberry, a sanitation department supervisor, that she was being sexually harassed by co-workers. Price reported that she was being verbally harassed by several co-workers, that one co-worker was rubbing up against her, and that another co-worker exposed himself to her. Price continued to suffer harassment and complained of the harassment to Hasberry "every other day."

Hasberry was not aware that Marshall Durbin had adopted any policy against sexual harassment. Hasberry, who left his job at Marshall Durbin in 1996, never saw Marshall Durbin's sexual harassment policy and was never trained with respect to sexual harassment. There is no evidence that the sexual harassment policy was posted in the Irondale facility at the times relevant to this action, although Marshall Durbin now mandates the public posting of that policy. Price did not receive a copy of the policy and denies that the policy was ever explained to her. Similarly, the personnel files of various employees indicate a lack of documentation that

2

the sexual harassment policy was reviewed with new or existing employees on a regular or thorough basis.

In response to Price's complaints, Hasberry did seek to protect Price from the alleged harassers by advising them to quit, or by staying near the plaintiff. Hasberry also reported the complaints to Willie Hurt, the assistant manager of the Irondale plant. After Hasberry ceased to be Price's direct supervisor, Price was placed under the supervision of Hurt, to whom she also complained about the constant harassment. Hurt conducted at least one meeting with the alleged harassers and other night-shift workers and instructed them about Marshall Durbin's sexual harassment policy.

At some point, Hasberry also notified the plant personnel manager, Donny Samples, about Price's complaint. Samples met with the employee who was accused of exposing himself to Price. In addition, the plant manager, Doug Morgan, was made aware of Price's complaints. One of the alleged harassers was given a written reprimand, but no other action was taken as a result of Price's many verbal complaints. Price never complained directly to anyone who ranked higher than Hurt, the assistant plant manager, and it is undisputed that no one ranking higher than Morgan was made aware of Price's allegations until after she filed her EEOC claim.

3

As the Irondale facility manager, Morgan was responsible for production and job safety. The president of Marshall Durbin testified that Morgan's job was to ensure that the chicken processing at the plant progressed efficiently and safely. Morgan's desk was located in a place that was designed to give him a full view of the processing area so that he could be alert to unsafe conduct or injuries. He did not have any input into corporate policy and did not oversee any non-production activities such as payroll, accounting, and administration. Plaintiff has offered no evidence to rebut the defendant's description of Morgan's position.

Price left Marshall Durbin in November of 1994. After pursuing her claim with the EEOC and after receiving her Right to Sue letter, the plaintiff commenced this action on May 27, 1998. She seeks compensatory and punitive damages pursuant to Title VII, 42 U.S.C. 2000e *et seq*. Defendant Marshall Durbin seeks partial summary judgment to preclude plaintiff from asserting a claim for punitive damages.

## II.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there

5

is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether

6

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every

inference but only of every reasonable inference. <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's motion seeks summary judgment on the issue of punitive damages, asserting that such damages are not available to the plaintiff under the holding of the Supreme court in <u>Kolstad v. American Dental Association</u>, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999).

In <u>Kolstad</u>, the Court examined the Title VII claims of a female employee who alleged that she had been denied a promotion based on her gender. She sought punitive damages from the employer for the acts of its agent in denying her the promotion and conducting a "sham" selection process. <u>Id</u>. at 2122. The district court denied the plaintiff's request for a jury instruction on punitive damages, and she appealed. A panel of the Court of Appeals for the District of Columbia Circuit reversed, holding that the fact that the jury could reasonably have found that the discrimination was intentional meant that punitive damages should have been available for the jury to consider. The court reheard the punitive damages question *en banc*, and affirmed the district court, holding that the punitive damages question may be submitted

8

to the jury only where "the evidence of the defendant's culpability ... exceed[s] what is needed to show intentional discrimination" and is "egregious." Id. at 2123. The Supreme Court granted *certiorari* to resolve a conflict among the federal courts of appeal concerning what circumstances provide a basis for submitting a request for punitive damages to a jury in a discrimination case.

The Court first noted that punitive damages were simply unavailable to prevailing Title VII plaintiffs until Congress passed 42 U.S.C. § 1981a(a)(1) and 1981a(b)(1) in 1994. While the statutes clearly were intended to limit the awarding of punitive damages to certain cases of intentional discrimination, the Court reasoned that the language of the statutes did not require that the conduct of the employer be "egregious." Id. at 2124. Instead, the Court noted, the statutes require the focus to be on the employer's state of mind, and require a finding that the employer acted with "malice" or "reckless indifference" to the plaintiff's rights. Id. While egregious conduct may be indicative of malice, it is not a separate element that must be present before punitive damages may be made available. Id. at 2125-26.

The requisite state of mind, malice, or reckless indifference, must be proven with regard to the employer in order for punitive damages to be appropriate. The state of mind of the harassing

9

employees is not necessarily the state of mind of the employer. See Splunge v. Shoney's Inc., 97 F.3d 488, 491 (11th Cir. 1996). In a situation where coworkers harass the plaintiff and lower management negligently fails to remedy the harassment, the corporation will not be held to possess the requisite state of mind absent a finding that the failure to provide remedial measures flowed from an "established policy of willful blindness." See id.

Punitive damages, even where applicable, will not be imposed on the employer without the necessary showing that liability is imputed to the employer. Kolstad, 119 U.S. at 2126. In other words, absent a common law basis for imputing liability, the principal cannot be liable for punitive awards based on the conduct of an agent.

Liability may be imputed to Marshall Durbin if the plaintiff can show that an employee in a "managerial capacity" either engaged in or was aware of the harassment about which plaintiff complains, or if an employee in a "managerial capacity" engaged in or ratified the harassment. The Eleventh Circuit Court of Appeals phrased the issue more simply in Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1322 (1999), stating that the plaintiff is not entitled to punitive damages absent proof that the corporation "- as opposed

10

to persons working for [the corporation] - was at fault." The appellate court went on to explain:

> Punitive damages are not necessary to compensate the plaintiff. Punitive damages are to punish: to punish those who have actually done wrong and not those who have liability by implication of law only. To get punitive damages, a Title VII plaintiff must show either that the discriminating employee was "high[] up the corporate hierarchy" or that "'higher management' countenanced or approved [his] behavior.

Id. at 1323 (citations omitted).

The question of which employees constitute "higher management" also has been addressed by the Eleventh Circuit Court of Appeals. In Splunge, the alleged harassment took place at a Captain D's restaurant, which was owned by Shoney's, Inc. The alleged harassers were the store manager, an assistant manager, and a dining room supervisor. The area supervisor, who oversaw several restaurants, had received complaints of the harassment. Even though the area supervisor had responsibility for a number of Shoney's-owned restaurants, and even though the alleged harassment was conducted by persons with managerial responsibility, the court held that none of the defendants were higher management, and that Shoney's constructive knowledge of the harassment could not provide a basis for the imposition of punitive damages. Splunge, 97 F.3d at

11

492. Similarly, in <u>Dudley</u>, the court found that neither a Wal-Mart store manager nor a co-manager was high enough in Wal-Mart's hierarchy to allow their acts to provide the basis for punitive damages. <u>Dudley</u>, 166 F.3d at 1323.

In the instant case, the plaintiff seeks to impute liability to the corporate entity for the harassment by her co-workers and the failure of her supervisors to stop it. Marshall Durbin has demonstrated that it had a policy against sexual harassment and at least occasionally sought to train its employees in an effort to prevent harassing conduct. The evidence also makes it clear that Marshall Durbin did an extremely poor job of publicizing and enforcing the policy at its Irondale facility. Even so, there is no evidence that anyone higher up in the corporation than Morgan, the facility manager, did anything to authorize or approve the alleged harassers' actions. The limited level of authority given to the Irondale facility manager is simply not sufficient to make him count as "higher management." The court agrees with defendant's assessment that Morgan was more akin to a "construction foreman" than to a true manager with broad discretion or authority.

Because the chain of authority relevant to this case stops at the Irondale facility manager, plaintiff is not entitled to punitive damages, even if she prevails on her Title VII claim. As

a result, the defendant's motion for partial summary judgment on the issue of punitive damages is due to be granted.

### IV. CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that defendants' motion for summary judgment against plaintiff on the issue of punitive damages is due to be granted, and plaintiff's prayer for punitive damages is due to be stricken. A separate order will be entered in accordance with the findings set forth herein.

Dated this 16th day of March, 2000.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

13